

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9409 | **DATE** | 6/10/2004 |
| **CASE TITLE** | Claveria et al vs. The Field Museum of Natural History | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant the museum's motions (Docs 24-1 & 27-1) for summary judgment on all counts of the amended complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 1 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 54 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO CLAVERIA, an individual; and ROBERT FRENCH, an individual, | ) ) ) | **DOCKETED** JUN 1 4 2004 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 02 C 9409 |
| THE FIELD MUSEUM OF NATURAL HISTORY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motions of Defendant Field Museum of Natural History ("the museum") for summary judgment of the claims of Plaintiffs Roberto Claveria and Robert French. For the reasons set forth below, the motions are granted.

## BACKGROUND

Claveria (born March 11, 1926) is a former employee of the museum; French (born December 25, 1927) is a current employee. At the time of the events at issue, both were employed as security guards in the museum's freight elevator and shipping area. At that time, Claveria and French worked 32 and 24 hours a week, respectively.

54

Although he began at the museum as a full-time guard, French reduced his hours because of restrictions placed on him by his physician for diabetes and breathing problems brought on by asthma and emphysema.

In January 2002, Jeff Hawkins, Senior Manager of Protection Services at the museum, informed French and Claveria that the museum was installing an electronic keycard security system on the freight elevator. As a result of the change, it was no longer necessary to place a security guard at the post that Claveria and French had occupied.

Hawkins offered both Claveria and French an "on-call" position, meaning that they would be contacted if another security guard could not report to work or if the museum had a need for extra security for special events and the like. Neither Claveria nor French was willing to take the "on-call" offer, and both asked whether there were any regular positions that they could take instead. Hawkins replied that there were no positions available aside from the "on-call" slots.

Undaunted, French wrote two letters to the museum requesting that he be considered for a full-time position. He also provided the museum with a note from his doctor, lifting his previous restrictions. Approximately three months after the date of the note, French was offered a full-time position as a security guard, which he still holds.

Claveria inquired of Hawkins about the possibility of his staying on at the museum "on the floor", once in January and again in August 2002, immediately prior to his termination. Both times, Hawkins informed Claveria that his employment was going to be terminated, and by implication indicated that he would not be hired "on the floor."

Both Claveria and French filed charges with the Equal Employment Opportunity Commission, and both received notices of their right to sue. Each timely filed suit against the museum.[1] Claveria alleged discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. French alleged discrimination under the ADEA as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, et seq. The parties have completed discovery, and the museum moves for summary judgment on all claims of both plaintiffs.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[1] The complaint was amended approximately two weeks after it was initially filed; all references within this opinion are made to the amended complaint.

Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we address the motions before us.

## DISCUSSION

### A. Claveria's Claims

*1. Age Discrimination in Violation of the ADEA*

Claveria has not offered any direct evidence of age discrimination. Instead, he proceeds under the indirect McDonnell-Douglas method. In a typical ADEA case

under the indirect method, a plaintiff must first surpass the threshold of the prima facie elements. They are membership within the protected group (persons 40 years of age and older), satisfactory job performance, an adverse employment action, and replacement by a similarly situated individual who is not within the protected class. Balderston v. Fairbanks Morse Engine Div. of Coltec Industries, 328 F.3d 309, 321 (7th Cir. 2003). In Claveria's case, which involves a reduction in force ("RIF"), the fourth factor is altered slightly because the employer decides who to re-hire or retain from a defined group of existing employees, thus narrowing the potential pool of similarly situated individuals. Id. To withstand summary judgment on an ADEA claim in the RIF context, a plaintiff must present sufficient evidence to allow a jury to find that the employer acted with a discriminatory intent in failing to consider the plaintiff for positions commensurate with his skills. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000).

The museum does not challenge Claveria's ability to establish the first and second components of his prima facie ADEA case. Claveria was in his mid-70s in 2002, and there is no evidence that he was not performing his duties in the freight elevator satisfactorily. The museum challenges Claveria's case on the third and fourth elements only.

Although Claveria was fired (the quintessential adverse employment action) by the museum, his ADEA claim does not focus on his termination. Instead, the claim is predicated solely on the decision not to consider for and consequently not to transfer Claveria to another job within the museum after the freight elevator positions were eliminated. According to the museum, this action does not constitute an adverse employment action for two reasons. First, Claveria never applied for a specific new position within the museum, so the absence of an offer resulted not from the museum's withholding of job opportunities but from Claveria's lack of interest or initiative in expressing his desire to apply for an available position. See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000).

In response to the museum's first argument, Claveria counters that he was not required to request a transfer because of his belief that his efforts would be futile. He cites Pime v. Loyola Univ. of Chicago, 803 F.2d 351, 353 n.1 (7th Cir. 1986), in support of this proposition. See also Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 365–66, 97 S. Ct. 1843, 1870 (1977). While the so-called "futile gesture doctrine" undisputedly exists, it is unavailable to Claveria for two reasons. First, there is no indication that it was futile for Claveria to submit an application. His co-plaintiff, who did apply for specific jobs, was ultimately transferred to another position in the museum. Second, the source of the futility in the cases applying the doctrine is an

official or well-known unofficial policy of discrimination based on the trait at issue in the plaintiff's complaint. See, e.g., Teamsters, 431 U.S. 324, 97 S. Ct. 1843 (allowing minority bus drivers to sue under Title VII without actually applying for jobs that would be closed to them by virtue of employer's discriminatory seniority and promotion policies); Pime, 803 F.2d 351 (hiring of non-Catholic professors to tenure track positions strongly discouraged at Jesuit university); Babrocky v. Jewel Food Co., 773 F.2d 857, 867 (7th Cir. 1985) (finding that employer's hiring practices sent a clear message that females would not be considered for meat cutter positions).

Here, Claveria did not conclude that any application efforts on his part would be futile because of an official or otherwise well-known policy of the museum that employees over 40 (or even over 70) would not be considered for positions within the Protection Services department. Nor could he, since the undisputed evidence in this case shows that the museum employed persons in both categories, including Claveria himself at the time he was hired.[2] Instead, Claveria apparently decided not to press the issue because he did not want to be viewed as overly persistent. He has offered

---

[2] Claveria was hired to work at the museum only four years before the events that gave rise to this suit, making him approximately 72 at the time he was hired. When an employee is well within the protections of the ADEA at the time of hiring and the termination of employment follows a short time later, it is reasonable to doubt that the plaintiff is the victim of age discrimination. See Kadas v. MCI Systemhouse Corp., 255 F.3d 359, 361–62 (7th Cir. 2001).

nothing by way of argument or evidence that his decision was even partially motivated by a perception that the museum would not hire persons protected by the ADEA. Thus, Claveria's failure to pursue specific job opportunities falls squarely within the teaching of Sauzek, that is, that an employee must do more than show general interest in obtaining some job with the employer before he or she can demonstrate that a failure to transfer was discriminatory. 202 F.3d at 919.

The museum's second argument with respect to the third element focuses on an alleged hiring freeze in place from January to March 2002 that it claims operated to prevent any transfer of Claveria when he was first informed of the RIF. Claveria disputes the existence of the hiring freeze but argues that, even if it did exist, it posed no impediment to his August request. While we agree with this formulation, as stated earlier, the August request was made in general terms, not as an application for a specific position. Thus, Claveria's arguments regarding the hiring freeze do not help him to establish the third element of his prima facie case. In other words, Claveria has not demonstrated that he suffered an adverse employment decision that could underlie a viable ADEA claim.

Even if he were able to show the third prima facie element, Claveria has not offered a similarly situated employee against whom we could compare his situation. To raise an inference of discrimination, Claveria must do more than simply identify

employees who obtained jobs in Protection Services between January and August 2002. See Radue, 219 F.3d at 619. To allow a valid comparison, he must show "that these employees also encountered a RIF, that they obtained positions for which [Claveria] was qualified, and that the supervisors in charge also knew that [Claveria] was looking for such positions." Id.

Claveria avers in his 56.1 statement of additional facts that all of the persons hired between January 2002 and August 2002 were hired from outside of the museum, either through a security placement service or an external application. According to Radue, none of these employees provide a valid comparison with Claveria because none was subject to the RIF. Claveria also points to several guards who were employed by the museum before January 2002 and were shifted to other positions within the museum between January and August 2002. However, only Lionel Dunn and Wendell Davis were subject to a RIF, and only Dunn was subject to the same RIF as Claveria. However, Claveria gives no information about the respective qualifications, experience, education, or other attributes of these two individuals. See id. at 617–18. In fact, Claveria states that Dunn was moved to the access control desk and that Davis's new assignment entailed a change in duties. Yet he offers no indication about the specifics of these new jobs or whether his own skills qualified him to perform them. The only comparative information that Claveria offers with respect

to his qualifications is with respect to individuals who were not subject to a RIF. Moreover, as discussed above, Claveria has not provided evidence that his supervisors were aware that he sought the positions that these individuals assumed. Thus, Claveria has not offered evidence that would enable a finder of fact to make a meaningful comparison such that an inference of discrimination would be available to the factfinder. See id. at 619.

Because Claveria has not made a prima facie showing on his ADEA claim, no presumption of discrimination arises, and we have no occasion to examine the museum's proffered reasons for its employment decision. See, e.g., Cerutti v. BASF Corp., 349 F.3d 1055, 1061 (7th Cir. 2003). Summary judgment in favor of the museum is warranted for Count I of the amended complaint.

### 2. *Race/National Origin Discrimination in Violation of Title VII*

For purposes of his Title VII claim, Claveria must establish the same prima facie elements as are required for his ADEA claim, except that the protected class is persons of his race or national origin rather than persons over the age of 40. See Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002). The third and fourth elements are identical under the two causes of action, and Claveria's prima facie showing is just as deficient for Title VII purposes as it was for his ADEA claim. As a result, the museum is entitled to summary judgment in its favor on Count IV.

**B. French's Claims**

*1. Age Discrimination in Violation of the ADEA*

The requirements of French's prima facie case on his ADEA claim are identical to those cited for Claveria. Again, there is no dispute that French was within the class of persons protected by the ADEA at the time in question. Nor is there a dispute that he adequately performed his duties at the freight elevator, so we turn our focus once more to the third and fourth elements.

French's situation is different from Claveria's in that his employment was not terminated after he was informed of the RIF; instead, French was transferred to another position within Protection Services in July 2002. He contends that the hardship he experienced in obtaining the transfer during the period between January and July 2002 constitutes an adverse employment action. We disagree. An adverse employment action must entail a "quantitative or qualitative change in the terms or conditions of employment." Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 532 (7th Cir. 2003). An inconvenience, such as the "fight" that French points to in this case, is insufficient. Id. French makes no contention that his duties, responsibilities, compensation, or benefits changed during this time. Therefore, his showing on the third element of his prima facie case is deficient. Id.

-11-

Even if that were not so, French's evidence on the fourth element, a similarly situated employee, is identical to Claveria's. Not surprisingly, then, it suffers from the identical infirmities, and no presumption of discrimination arises as to the museum. Summary judgment is again appropriate with regard to Count II.

*2. Disability Discrimination in Violation of the ADA*

Finally, we reach French's claim of disability discrimination in violation of the ADA. On this cause of action, French again pursues only the indirect method of establishing his case, and he does not contend that he has a disability within the meaning of the ADA. Rather, he claims that the museum violated the ADA via its incorrect perception that he was disabled. To make a prima facie showing under these circumstances, French must demonstrate that 1) the museum regarded him as having an impairment that substantially limited him in one or more major life activities, 2) he is qualified to perform the essential functions of his job with or without any reasonable accommodation, and 3) he suffered an adverse employment action because of the museum's mistaken perception of him as being disabled. See Pugh v. City of Attica, 259 F.3d 619, 626 (7th Cir. 2001).[3]

---

[3] Because French contends that the alleged discrimination only prevented him from obtaining a full-time job at the museum between January 2002, when he first sought such duties, and July 2002, when he was offered his current position, we confine our inquiry to the same time frame.

The museum initially contends that French cannot satisfy the first element of his ADA case because he is not limited in a major life activity. French responds that he is limited in standing and in getting along with others. When addressing whether an activity is a major life activity, the central focus of the inquiry must be whether the plaintiff is unable to engage in the activity to the extent that most people do so within their daily lives, not whether the plaintiff is unable to engage in the activity to the extent required by a specific job. Toyota Motor Mfg., Ky., Inc., v. Williams, 534 U.S. 184, 200–01, 122 S. Ct. 681, 693 (2002).

With respect to standing, French has shown at most that the museum perceived him as unable to stand for long periods, as much as 8 hours at a time. French makes no claim that he is unable to stand at all, or that he is unable to stand for periods of time typical of most people's daily lives. It is safe to say that most people do not stand for even close to 8 hours per day. Thus, French's difficulties standing limited him at most in his particular job, not in a major life activity. Thus, even if the museum did regard French as unable to stand for the amounts of time required of a floor security guard, "an employer does not regard a person as disabled simply by finding that the person cannot perform a particular job." Peters v. City of Mauston, 311 F.3d 835, 843 (7th Cir. 2002).

That leaves French's claim that the mood swings he experienced when his diabetes caused his blood sugar to fluctuate limited him in the major life activity of getting along with others. While interacting with others in any context is an activity central to daily life, French does not advance any evidence that his mood swings affected him unless he was dealing with museum attendees in public areas of the museum. There is no evidence that French was unable to interact with his co-workers when he switched to working in the freight elevator and shipping area, or that he had difficulty getting along with others when he was not at work. Without such evidence, there is no reasonable basis to conclude that French was substantially limited in this area of his life. In sum, French has not presented any evidence that he has a disability within the meaning of the ADA, or that the museum thought that he was limited so severely as to have a disability that would entitle him to protection under the statute, and his prima facie case fails at the outset. See Tockes v. Air-Land Transport Servs., 343 F.3d 895, 896 (7th Cir. 2003).

The museum also challenges French's showing on the second element of his claim. In light of the medical information provided by French's doctors, we agree that French cannot argue that he could, with or without reasonable accommodation, perform the essential functions of a "floor" security guard, namely standing for extended periods of time and pleasantly interacting with museum attendees. We are not

persuaded by French's contention that the museum had a legal duty under the ADA to independently determine whether French in fact could perform these functions before denying him a transfer rather than relying on the statements of French's doctors. To accept this premise would be to require an employer to override the medical advice given to an employee by his own physicians. In other words, French claims that the museum should have told him that he was fine when his own doctors had told him he was not. We do not accept that the ADA imposes a duty on employers to engage in such paternalistic overreaching. Thus, we agree that French was not qualified to perform the essential duties of the positions to which he sought transfer between January and early May 2002.

Even if French had enough evidence to mandate a different conclusion on the prior two elements, the third is insufficient for the same reasons stated with respect to his ADEA claim. French cannot show that the delay in transfer in this case, which was at most six months, constituted an adverse employment action. Accordingly, French's ADA claim, like the other three counts, succumbs to the museum's summary judgment challenge.

## CONCLUSION

Based on the foregoing analysis, we grant the museum's motions for summary judgment on all counts of the amended complaint.

/s/ Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

JUN 1 0 2004

Dated: _____

-16-